| SUCCESSION OF DOROTHY B. NERO | * | NO. 2021-CA-0593 |
|---|---|---|
| | * | |
| | | COURT OF APPEAL |
| | * | |
| | | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2021-01258, DIVISION "C"
Honorable Sidney H. Cates, Judge
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Edwin A. Lombard, Judge Paula A. Brown, Judge Tiffany Gautier Chase)


Taylor C. Stone
THE LAW OFFICE OF TAYLOR C. STONE, LLC
627 Cherokee Street, Suite 205
New Orleans, LA 70118

   COUNSEL FOR APPELLANT


Richard R. Schulze
ATTORNEY AT LAW
3445 N. Causeway Blvd.
Suite 505
Metairie, LA 70002

   COUNSEL FOR APPELLEE


       **MOTION TO DISMISS
       GRANTED;
       APPEAL DISMISSED
       MARCH 16, 2022**

This is a succession proceeding. Appellant, Scarlett Nero Trevigne, appeals the district court's June 8, 2021 judgment, which denied her petition to annul her mother's, Dorothy B. Nero, notarial testament based on improper form. Appellee, Israel Nero, filed a motion to dismiss the appeal based on prematurity. Finding that this court lacks appellate jurisdiction, for the reasons that follow, we grant the motion to dismiss and dismiss the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 2021, Dorothy B. Nero ("Decedent"), a resident of Orleans Parish, died testate. Decedent executed a last will and testament (the "testament") on November 12, 2020, and appointed her grandson, Israel Nero ("Mr. Nero"), as the independent executor of her estate. On February 9, 2021, Mr. Nero filed, in the district court, a petition seeking to probate Decedent's testament (the "petition to probate") and letters of independent executorship of Decedent's estate. In the petition to probate, Mr. Nero alleged Decedent was married once to Joseph James Nero, III, from whom she was divorced. From this marriage, the Neros had two

children, Scarlett Nero Trevigne ("Ms. Trevigne") and Joseph Nero.[1] Joseph Nero predeceased Decedent on January 10, 2011, and had three descendants of his own, Mr. Nero, Faith Nero, and Ariel Nero. Mr. Nero attached to his petition to probate an affidavit of death, domicile, and heirship; Decedent's testament; a sworn detailed and descriptive list of Decedent's assets; and a sworn oath as independent executor. On the same day, the district court named, appointed and confirmed Mr. Nero as the independent executor of Decedent's estate.

On February 18, 2021, Ms. Trevigne filed a petition to annul notarial testament on the grounds of testamentary capacity, undue influence and fraud (the "original petition to annul"). Ms. Trevigne alleged the testament was invalid, as Decedent was on hallucinogenic drugs and not in sound mind at the time she executed the testament. Ms. Trevigne attached, to the original petition to annul, a July 29, 2020 medical report that indicated Decedent was suffering from a number of physical and mental conditions.[2] Ms. Trevigne further contended Decedent was subjected to undue influence of Mr. Nero, and the testament was potentially a forgery. The validity of Decedent's testament based on testamentary capacity, undue influence and fraud was scheduled to be heard in the district court on March 9, 2021.

On March 4, 2021, Ms. Trevigne filed a first supplemental and amending petition to annul notarial testament based on the form of the testament ("amended

---

[1] There is a discrepancy in the facts as alleged by Mr. Nero in his petition to probate. According to the allegations contained in Ms. Trevigne's petition to annul notarial testament, which will be more fully discussed, *infra*, Decedent was married twice, first to Joseph James Nero and second to Burn Young, from whom she shared one child–Claire Young Pope, who had reached the age of majority.

[2] The medical report indicated Decedent was diagnosed with syncope, aortic atherosclerosis, homocysteinemia, chronic kidney disease, unintentional and progressive weight loss, and benign essential hypertension.

petition to annul"). Ms. Trevigne alleged that pursuant to La. C.C. art. 1577[3] the testament was an absolute nullity because the attestation clause in the testament was defective, in that it did not indicate it was executed by Decedent in the presence of a notary and two witnesses and the testament itself was not dated. The validity of Decedent's testament based on form was also scheduled to be heard on March 9, 2021.

On March 9, 2021, Ms. Trevigne filed an unopposed motion to continue the hearing on the issues raised in both the original and amended petition to annul (collectively referred to as the "petition to annul testament"). Ms. Trevigne set forth that although all issues raised in the petition to annul testament were scheduled to be heard on March 9, 2021, the issues of testamentary capacity, undue influence and fraud raised in the original petition to annul required testimony while the issue of testamentary form raised in the amended petition to annul only required oral argument. As such, the parties agreed to schedule two separate hearings, as the adjudication of Ms. Trevigne's allegations of lack of form will dictate whether there exists a need to litigate Ms. Trevigne's claims of

---

[3] La. C.C. art. 1577 provides:

The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:

(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.

(2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."

3

testamentary capacity, undue influence and fraud. The district court ordered that the petition to annul testament as to form only be continued and rescheduled for hearing on April 15, 2021. The district court further ordered that trial on the remaining issues–testamentary capacity, undue influence and fraud–be continued and a new date would be selected, if needed, after the April 15, 2021 hearing.

Following the hearing on Ms. Trevigne's allegations that the testament lacked proper form, on June 8, 2021, the district court issued its judgment with incorporated reasons, explaining that while La. C.C. art. 1577 required the testament to be dated, it did not specify where it must appear.[4] The district court, having found that "the date of the testament was included in the 'Self-Proved Affidavit' and signed by Decedent and two witnesses," denied Ms. Trevigne's petition to annul *only* as to the form of the testament.[5] On July 26, 2021, Ms. Trevigne filed a motion to reset for trial the claims asserted in her original petition to annul relative to the validity of Decedent's testamentary capacity, undue influence and fraud.

On August 5, 2021, Ms. Trevigne filed a motion for devolutive appeal. After the record was lodged into this Court, Mr. Nero filed a motion to dismiss appeal, which this court referred to the appeals panel. We now turn to the merits of the motion to dismiss.

## JURISDICTION

---

[4] "[R]easons for judgment only set forth the basis for the court's holding and are not binding." *Bernstein v. Bernstein*, 2019-1106, p. 13 (La. App. 4 Cir. 2/10/21), 313 So.3d 413, 423 (quoting *Scott v. Am. Tobacco Co., Inc.*, 2015-1352, p. 11 (La. App. 4 Cir. 5/25/16), 195 So.3d 624, 630).

[5] On April 6, 2021, Ms. Trevigne filed a motion for summary judgment based on the same grounds raised in her amended petition to annul. The district court did not schedule the motion for summary judgment for hearing; rather, the district court judge made a notation on the judge's signature line which stated, "See judgment signed on 6/8/21".

4

Mr. Nero filed a motion to dismiss appeal on the basis that the June 8, 2021 judgment, which denied Ms. Trevigne's petition to annul testament only as to the form of the testament, is not a final judgment. Mr. Nero contends that because undetermined issues are currently pending before the district court on the petition to annul, the June 8, 2021 judgment is a non-appealable interlocutory judgment, and this court lacks jurisdiction to hear the instant appeal.[6]

It is well established that "appellate courts have a duty to determine whether subject matter jurisdiction exists to entertain an appeal, even if the parties fail to raise the issue." *Succession of Thompson*, 2020-0536, ____ So.3d ____, 2021 WL 2956057, at *1 (La. App. 4 Cir. 7/14/21) (citing *Waiters v. deVille*, 2020-0556, ____So.3d ____, 2020 WL 8455459, at *2 (La. App. 4 Cir. 12/30/20) (citation omitted). "A judgment is the determination of the rights of the parties in an action and may award any relief to which the parties are entitled. It may be interlocutory or final." La. C.C.P. art. 1841. "A judgment that determines the merits in whole or in part is a final judgment." *Id.* "A judgment that does not determine the merits but only preliminary matters in the course of the action is an interlocutory judgment." *Id.* "The proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." *Waiters*, ____So.3d at ____, 2020 WL 8455459, at *2 (quoting *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 2012-0906, p. 4 (La. App. 4 Cir. 2/20/13), 155 So.3d 560, 562). "[A] judgment that determines the entirety of the merits of the action is

---

[6] Mr. Nero filed an exception and motion to dismiss based on prematurity. An exception of prematurity shall be pleaded prior to or in the answer to the petition and shall be tried in advance of trial of the case, or it is deemed waived. *See* La. C.C.P. arts. 926, 928 and 929; s*ee also Moreno v. Entergy Corp.*, 2010-2268, pp. 4-5 (La. 2/18/11), 64 So.3d 761, 762-763. Nonetheless, based on the arguments raised in his motion to dismiss, we recognize his motion as one of lack of subject matter jurisdiction. *See, e.g., Moreno*, 2010-2268, p. 4, 64 So.3d at 763 (citing La. C.C.P. art. 865) (wherein the Supreme Court espoused, "we are obligated to construe the exception by its substance, not the title supplied by the litigant").

appealable under [La. C.C.P. art.] 2083, but a judgment that only partially determines the merits of the action is a valid partial final judgment (and therefore appealable) only if authorized by [La. C.C.P. art.] 1915." *Wells Fargo Fin. Louisiana, Inc. v. Galloway*, 2017-0413, p. 4 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 798 (quoting *Rhodes v. Lewis*, 01-1989, p. 3 (La. 5/14/02), 817 So.2d 64, 66) (citation omitted). While the Louisiana Code of Civil Procedure permits the immediate appeal of specific judgments arising out of a succession proceeding, the district court's June 8, 2021 judgment is not one of them.[7]

"A probated testament may be annulled only by a direct action brought in the succession proceeding against the legatees, the residuary heir, if any, and the executor, if he has not been discharged." La. C.C.P. art. 2931. A judgment that does not dispose of all of the issues within the context of the direct action to annul a testament is not a final appealable judgment; rather, it is a partial judgment rendered under La. C.C.P. art. 1915(B)(1).[8] *See In re Succession of Theriot*, 2008-1233, p. 5 (La. App. 1 Cir. 12/23/08), 4 So.3d 878, 882 (citation omitted). If an appeal is taken from a judgment rendered under La. C.C.P. art. 1915(B)(1), the

---

[7] *See* La. C.C.P. art. 3308 (a suspensive appeal may be taken from a "judgment homologating a tableau of distribution"); La. C.C.P. art. 3337 ("[a] judgment homologating a final account has the same effect as a final judgment"); La. C.C.P. arts. 2122 and 2974 (judgments appointing or removing a succession representative).

[8] La. C.C.P. art. 1915(B)(1) provides:

> B. (1)When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

district court shall retain jurisdiction to adjudicate the remaining issues in the case. *See* La. C.C.P. art. 1915(C).

Ms. Trevigne, relying on *In re Succession of McLean*, 2009-1851, 2010 WL 2342752, at *1 (La. App. 1 Cir. 6/11/10), argues that she instituted two separate direct actions to annul the testament in the district court. Ms. Trevigne contends that the first filed direct action challenged the testament on the grounds of testamentary capacity, undue influence and fraud, while the second direct action challenged the testament as to its form. According to Ms. Trevigne, the June 8, 2021 judgment is a final appealable judgment that fully disposed of her second direct action to annul the testament. We find Ms. Trevigne's reliance on *McLean* is misplaced.

In *McLean*, the plaintiff filed, in the succession proceeding, an action to annul the decedent's testament based on the decedent's lack of testamentary capacity and undue influence. The plaintiff claimed that the decedent had Alzheimer's disease and impaired vision at the time the testament was executed. After hearing two days of testimony on all the grounds to annul the testament, the district court denied the plaintiff's petition to annul. The plaintiff filed a motion for new trial and contended that at the time of the hearing to annul the testament, she was unable to obtain certain witness testimony and evidence to corroborate her claims. The district court denied the motion and concluded that the plaintiff offered ample evidence of the decedent's capacity and undue influence. The plaintiff appealed and the *McLean* Court remanded the case "with instructions that the [district] court allow the plaintiff the opportunity to file a motion re-urging her [petition] to annul the probated testament[,]" and "hold a hearing on the motion . . .

7

to allow the plaintiff to introduce additional evidence and witness testimony at the hearing." *Id.*

The defendants filed an application for rehearing. The defendants argued that the district court's judgment was a final judgment, and that the plaintiff's opportunity to introduce new evidence would arise out of the district court's granting of the plaintiff's motion for new trial. The appellate court granted the rehearing and explained that the judgment denying the plaintiff's petition to annul was *fully* determined on the merits. The *McLean* Court found that as the plaintiff introduced ample evidence, and because the district court's "judgment disposed of *all* of the issues in controversy presented within the context of the [plaintiff's petition] to annul, it [was] a final, appealable judgment." *Id.* at *2 (emphasis added).

In the case *sub judice*, the district court's judgment reads, in pertinent part:

> Per request of the parties, the Court only heard arguments as to the form of the [testament].

> *            *            *

> **IT IS ORDERED, ADJUDGED AND DECREED** that the Motion to Annul Notarial Testament filed by [Ms. Trevigne] only as to the form of the Testament is hereby **DENIED**.

After the district court rendered its judgment and before Ms. Trevigne filed a motion for devolutive appeal, Ms. Trevigne filed a motion to reset the remaining claims alleged in her original petition to annul testament. Unlike *McClean*, the denial of Ms. Trevigne's amended petition to annul testament did not dispose of *all* of the issues in controversy within the context of her action to annul notarial testament. Consequently, the district court's judgment, which denied Ms. Trevigne's action to annul the testament only as to its form, is not a final

8

appealable judgment, but rather it is a partial judgment pursuant to La. C.C.P. art. 1915(B)(1).

Nonetheless, this Court has exercised its discretion and converted a non-appealable judgment to an application for supervisory writs when the following two conditions are satisfied: "(1) [t]he motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under La. Unif. R. Ct. App. 4-3; and (2) [w]hen the circumstances indicate that an immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation." *Waiters*, ____ So.3d at ____, 2020 WL 8455459, at *2-3 (quoting *Mandina, Inc. v. O'Brien*, 2013-0085, pp. 7-8 (La. App. 4 Cir. 7/31/13), 156 So.3d 99, 103-104) (citation omitted). In the case *sub judice*, neither of the conditions were met to convert the district court's June 8, 2021 non-appealable judgment to an application for supervisory writs. As previously espoused, the district court rendered its judgment on June 8, 2021. Ms. Trevigne filed her motion for devolutive appeal on August 5, 2021, well after the thirty-day time delay allowed for the filing of an application for supervisory writs.[9] Additionally, this Court's reversal would not terminate the litigation because the claims set forth in the original petition to annul testament remain undetermined. As this Court lacks jurisdiction to hear this matter on appeal, the motion to dismiss is granted.

## CONCLUSION

Based on the foregoing, we grant the motion to dismiss and dismiss the appeal.

---

[9] The motion was filed fifty-eight (58) days after judgment was rendered.

9

**MOTION TO DISMISS GRANTED;**
**APPEAL DISMISSED**